UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WORLD KITCHEN, LLC, | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE AMERICAN CERAMIC SOCIETY, RICHARD C. BRADT, RICHARD L. MARTENS, and PETER WRAY, | ) Case No. 12-cv-8626 ) ) ) Judge John W. Darrah ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff World Kitchen, LLC has brought this action for trade disparagement and deceptive trade practice against Defendants The American Ceramic Society ("ACS"); Peter Wray, the editor of the *Bulletin of the American Ceramic Society* ("the *Bulletin*"); and Richard C. Bradt and Richard L. Martens, the authors of a *Bulletin* article entitled "Shattering Glass Cookware." Defendants have filed a Motion to Dismiss pursuant to the Illinois Citizen Participation Act, 735 Ill. Comp. Stat. 110/1 *et seq.*, and also a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Oral arguments on both Motions were heard on August 29, 2013. For the reasons discussed below, Defendants' Motions [18, 24] are denied.

## BACKGROUND[1]

World Kitchen, headquartered in Rosemont, Illinois, is a leading manufacturer and distributor of kitchenware products, including Pyrex brand glass cookware, which it purchased in

---

[1] The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of the Motion to Dismiss. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 502 (7th Cir. 2011).

1998 from Pyrex's original manufacturer, Corning Incorporated ("Corning"). (Compl. ¶ 27.) Defendant ACS is an Ohio corporation and, according to its website, www.ceramics.org, is comprised of "more than 9,500 scientists, engineers, researchers, manufacturers, plant personnel, educators, students, marketing and sales professionals" with a mission "to advance the study, understanding, and use of ceramics and related materials for the benefits of our members and society." (*Id.* ¶ 28.) The ACS provides its members and subscribers with access to various periodicals and books, including distributing to its members its monthly publication, the *Bulletin*. According to ACS, the *Bulletin* is "the industry's undisputed authority on news and new developments in the ceramics and glass industries" and is read by "more than 14,000 ceramics and glass experts in more than 50 countries." (*Id.* ¶ 10.) ACS expressly points out that its *Bulletin* feature stories are not peer-reviewed or critically assessed, as they would be for scientific journal articles, (*id.* ¶¶ 11, 13) and are "not meant to be at a technical level as detailed as if they were being prepared for a peer-reviewed journal." *See* http://ceramics.org/publications-and-resources/the-bulletin/write-for-the-bulletin.

At the heart of World Kitchen's Complaint is a September 2012 article entitled "Shattering Glass Cookware," which was authored by Defendants Bradt and Martens, edited by Defendant Wray, and published as a feature story in the *Bulletin*. (*Id.*) The article claimed that American-made soda lime silicate glass cookware, including Pyrex, is more likely to shatter than European-made borosilicate glass cookware during normal kitchen use. (*Id.* ¶ 38.) The *Bulletin* article further stated that incidents of shattering Pyrex cookware had been documented by the Consumer Products Safety Commission ("CPSC") and by the Consumers Union in its *Consumer Reports* magazine. (*Id.* Ex. A.) However, according to World Kitchen's Complaint, the *Bulletin* article was false and misleading in several respects. For example, the *Bulletin* article omitted

2

that the CPSC had examined these incidents in 2008 and had concluded that Pyrex cookware presented no safety concern and that federal safety data confirmed Pyrex's safety. (*Id.* ¶ 37.) The *Bulletin* article also did not disclose that Consumers Union's testers intentionally subjected Pyrex glassware to extreme conditions that were outside of normal kitchen use and that were intended to induce shattering, such as filling the glassware with sand (which doubles the heat), superheating it to 450ºF for 80 minutes, then placing it on a cold stone surface soaked with water. (*Id.* ¶¶ 42(d), (g).) Also omitted was the fact that Defendant Bradt, the main author, had a financial stake in disparaging Pyrex, because he serves as an expert witness for personal injury plaintiffs suing manufacturers of soda lime silicate glass cookware. (*Id.* ¶ 29.)

Furthermore, World Kitchen contends that Bradt and his co-author, Defendant Martens, improperly analyzed the thermal stress resistance ("TSR") properties of Pyrex, which is heat-strengthened, by calculating a TSR of soda lime silicate glass that had not been heat-strengthened and does not have a TSR comparable to Pyrex. (*Id.* ¶¶ 42(c), (f), Ex. A.) Instead, the authors concluded, allegedly without proper scientific study, that heat-strengthening appeared to be ineffective and not sufficient to increase the TSR. (*Id.* Ex. A.) The authors' tests allegedly falsely concluded that Pyrex is only "borderline safe" and "inadequate" for normal kitchen use, cannot withstand a modest temperature differential of 99ºF, and is much more likely to shatter than European-made glassware. (*Id.* ¶¶ 42(d)-(g), Ex. A.) Around the same time that the *Bulletin* article appeared, Defendant Wray issued a blog post entitled "Hell's Kitchen: Thermal Stress and Glass Cookware that Shatter," which emphasized the false statements in the *Bulletin* article and claimed that Pyrex was "prone to frequent failure." (*Id.* ¶¶ 31, 39, 60, Exs. A, B.) Following the blog post, on September 6, 2012, ACS issued a "News Release," which further promoted the *Bulletin* article as explaining why glass cookware sold in the United States,

3

including Pyrex glass cookware, "is more susceptible" to "explosive shattering" and "exposing consumers to injury from flying glass shards." (*Id.* ¶¶ 40, 59.) On September 22, 2012, World Kitchen sent a letter to ACS requesting a retraction and removal of the *Bulletin* article, blog post and press release; ACS declined to do so. (*Id.* ¶¶ 22-25.)

World Kitchen subsequently filed this action, alleging violations of Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2(7), (8), and (12) (Count I) and common law trade disparagement (Count II). Its Complaint seeks an injunction against the *Bulletin* article and an order compelling a retraction and confessing scientific malfeasance. Defendants have moved to dismiss the Complaint for failure to state a claim under 12(b)(6) and under the Illinois Citizen Participation Act, 735 Ill. Comp. Stat. 110/1 *et seq.*

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint satisfies this threshold of facial plausibility when it has sufficient factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need only provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)), a mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When evaluating a motion to dismiss under Rule 12(b)(6), all factual allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the plaintiff. *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013).

Under Federal Rule of Civil Procedure 12(b), "[i]f, on a motion asserting . . . failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, there are some exceptions to this rule. The court may take judicial notice of matters of public record without converting the motion to a motion for summary judgment. *Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000). Further, documents that a defendant attached to a motion to dismiss can be considered part of the pleadings if "they are referred to in the plaintiff's complaint and are central to [his] claim." *Venture*, 987 F.2d at 431. All other matters outside the pleadings should not be considered under a Rule 12(b)(6) motion to dismiss.

## ANALYSIS

### *Defendants' 12(b)(6) Motion to Dismiss*

World Kitchen asserts trade disparagement claims both under common law and UDPTA against Defendants. In relevant part, UDPTA provides that defendant "engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person":

> (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;
> (8) disparages the goods, services, or business of another by false or misleading representation of fact; . . .
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(7), (8), (12). UDPTA "substantially embodies the common law tort of commercial disparagement," and therefore, the analysis for both the statutory and common law claims is the same. *Am. Wheel & Eng'g Co., Inc. v. Dana Molded Prods., Inc.*, 476 N.E.2d

5

1291, 1295–96 (Ill. App. Ct. 1985). A plaintiff "must allege that defendant published untrue or misleading statements that disparaged the plaintiff's goods or services." *Morton Grove Pharms., Inc. v. National Pediculosis Ass'n, Inc.*, 494 F. Supp. 2d 934, 942 (N.D. Ill. 2007).

Defendants do not directly attack World Kitchen's common law or statutory trade disparagement claims. Rather, Defendants argue that World Kitchen's Complaint should be dismissed under Rule 12(b)(6) on the basis that the *Bulletin* article is a scientific opinion that is protected by the First Amendment. Defendants essentially argue that World Kitchen's Complaint must be addressed using a defamation analysis. Defendants contend that the *Bulletin* article, related blog post and news release (together, "the Publications") are non-actionable, noncommercial speech, which are privileged because they address matters of public interest, and that World Kitchen has failed to plead actual malice to overcome that privilege. Defendants also argue that injunctions, such as the one sought by World Kitchen, are rare and generally improper to restrain noncommercial speech such as the Publications.

At the pleading stage, drawing all inferences in favor of World Kitchen as is required, World Kitchen has stated a claim for trade disparagement. World Kitchen's Complaint sufficiently alleges that Defendants made misleading or false statements of *fact*, not just opinion, about World Kitchen's Pyrex cookware. *See Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 840 (Ill. 2006). ("If a statement is factual, and it is false, it is actionable."); *see also Morton Grove Pharms., Inc.*, 494 F. Supp. 2d at 942 ("Here, the complaint alleges that the statements are factually misleading; therefore on the face of the complaint, plaintiff's claims are not barred under Illinois law or by the First Amendment."). For example, World Kitchen alleges that Defendants made false statements about Pyrex's tendency to shatter because Defendants knowingly calculated a TSR for soda lime silicate glass that was different from

6

Pyrex because it had not been heat-strengthened. (Compl. ¶¶ 4-6, 42.)[2] World Kitchen also alleges that Defendants made misrepresentations by omission when Defendants failed to disclose that author Bradt has a commercial interest in the disparaging American-made Pyrex. (*Id.* ¶¶ 14-15.) Defendants also allegedly made misrepresentations when they failed to disclose that the previous tests, described by the *Bulletin* story, had concluded that Pyrex was safe and that the testing had involved extreme conditions unlike normal kitchen use. (*Id.* ¶ 42.) Likewise, Defendants also allegedly falsely concluded that Pyrex is not safe for normal kitchen use. (*Id.* ¶¶ 2-3, 42.) Taken as true, these allegations support a reasonable inference that Defendants disparaged World Kitchen's products with actionable statements of fact. *Morton Grove Pharms., Inc.*, 494 F. Supp. 2d at 943 (holding that plaintiff sufficiently alleged a trade disparagement claim).

Defendants also argue that World Kitchen has not pleaded that they acted with "actual malice" to overcome the qualified privilege afforded to publications that are in the "public interest." World Kitchen responds that it is not necessary to plead actual malice for its trade disparagement case, but, in any event, it has stated allegations that meet this standard. The Seventh Circuit recently explained that actual malice "looks as if it might mean 'ill will' but in fact means knowledge the statement is false or reckless disregard of whether it is false." *Pippen v. NBCUniversal Media, LLC*, --- F.3d ----, 2013 WL 4450590, at *1 (7th Cir. Aug. 21, 2013). Defendants also rely on the Seventh Circuit decision *Underwager v. Salter*, 22 F.3d 730, 735-36

---

[2] Defendants argue that it is a matter of scientific opinion whether heat-strengthening increases the strength of soda lime silicate glass. Although this may be the case, the Court whether the authors' testing of soda lime silicate glass that was not heat-strengthened materially misrepresents World Kitchen's Pyrex cookware is a question of fact that is not properly decided at the pleading stage.

(7th Cir. 1994). But it is important to note that in *Underwager*, the Seventh Circuit affirmed the grant of summary judgment in defamation case where the record evidence showed no proof of actual malice. In any event, in this case, World Kitchen has sufficiently alleged, for purposes of a motion to dismiss, that the Defendants acted with actual malice by alleging that Defendants blatantly and recklessly disregarded facts, data and information available to them that Pyrex cookware is safe. (Compl. ¶¶ 8, 42.) As such, the misrepresentations and omissions alleged by World Kitchen present issues of fact that are not properly decided at the pleading stage.

Because World Kitchen has sufficiently stated claims for trade disparagement under the common law and UPDTA, Defendants' 12(b)(6) Motion to Dismiss is denied.

*Defendants' ICPA Motion*

Defendants have also moved to dismiss World Kitchen's Complaint under the Illinois Citizen Participation Act ("ICPA"), 735 ILCS 110/1 *et seq.* The ICPA permits a defendant to move to "dispose" of a lawsuit on the basis that the lawsuit "relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government." 735 ILCS110/15; *see also Sandholm v. Kuecker*, 962 N.E.2d 418, 429 (Ill. 2012). Also known as Illinois's "Anti-SLAPP" statute, the ICPA is meant to protect First Amendment rights from strategic lawsuits against public participation, or "SLAPPs." *See Chi v. Loyola University Medical Center*, 787 F. Supp. 2d 797, 808-09 (N.D. Ill. 2011). The movant carries the initial burden of showing that a complaint is a SLAPP in retaliation for the movant's petition, speech, association or other participation in government. 735 ILCS 110/15; *see also Lucky Fella LLC v. Village of Oak Brook*, No. 11 C 08936, 2013 WL 1337316, at *6 (N.D. Ill. Mar. 29, 2013).

In *Sandholm*, 962 N.E.2d at 431, the Illinois Supreme Court held that ICPA applies to "only meritless, retaliatory SLAPPs." In that case, the Illinois Supreme Court reversed and remanded the dismissal of the plaintiff's complaint under the ICPA. The *Sandholm* court explained that:

> We simply do not believe that, in enacting the anti-SLAPP statute, the legislature intended to abolish an individual's right to seek redress for defamation or other intentional torts, whenever the tortious acts are in furtherance of the tortfeasor's rights of petition, speech, association, or participation in government.

*Id.* Based on the parties' pleadings, the court concluded that the plaintiff's complaint was "not *solely* based on, related to, or in response to the acts of defendants in furtherance of the rights of petition and speech" but, rather, was to seek redress for the defendants' allegedly tortious acts. *Id.* (emphasis added). Following *Sandholm*, the federal district court in *Cartwright v. Cooney*, No. 10-cv-16912012 WL 1021816, at *7 (N.D. Ill. Mar. 26, 2012), held that the defendant had not met his burden that the plaintiff's lawsuit was based "solely" on the defendant's petitioning activities. The court explained that "as long as Plaintiff's objective in bringing suit was not to stifle Defendant's political expression but sought redress for damages incurred by Defendant's alleged defamation or intentional infliction of emotional distress, the ICPA does not protect Defendant's speech." *Id.*

When sitting in diversity jurisdiction over state law claims, as is the case here, a federal court applies state substantive law and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Courts in this district have held that the ICPA creates a substantive defense to state law claims. *See, e.g., Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 WL 5903508, at *2 (N.D. Ill. Nov. 22, 2011); *Chi*, 787 F. Supp. 2d at 808. However, in applying this substantive defense, federal procedure must still be followed. For example, in *Metabolife Int'l,*

9

*Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001), the Ninth Circuit held that certain procedural provisions of California's anti-SLAPP statute conflicted with the Federal Rules and would not be applied in federal court. The *Metabolife* court explained that "[p]rocedural state laws are not used in federal court if to do so would result in a 'direct collision' with the Federal Rules of Civil Procedure." *Id.* (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 (1980).

  Thus, a point of contention in this case, and one which was vetted during the oral arguments presented by both parties, is how to address the Defendants' ICPA Motion under the Federal Rules of Civil Procedure. Defendants purport to bring this Motion "jointly with its Rule 12(b)(6) Motion pursuant to Fed. R. Civ. P. 12(g)(1)." Rule 12(g)(1) provides that "[a] motion under this rule may be joined with any other motion allowed by this rule." The motions allowed by Rule 12 include: Rule 12(b) motions, which are based on six specific defenses and are filed before responsive pleadings (including Rule 12(b)(6)'s failure to state a claim defense); and Rule 12(c) motions for judgment on the pleadings, which are asserted after an answer is filed. Rule 12 also states that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Despite contending that their Motion is brought pursuant to Rule 12, Defendants have submitted materials that go beyond the Complaint, including declarations and information about the CPSC report.

  Although the Seventh Circuit has not directly addressed how the ICPA fits into federal procedural law, the Ninth Circuit recently addressed motions under California's anti-SLAPP statute in *Z.F. v. Ripon Unified School Dist.*, 428 Fed. App'x 239, 240 (9th 2012). Following

*Metabolife*, the court explained that there is a "threshold inquiry" whether to apply a motion to dismiss standard or a summary judgment standard. *Id.* The court explained that:

> If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted.

*Id.* The court concluded that the movant's anti-SLAPP motion was properly held to a Rule 12 standard because it was based on legal arguments and not a failure of evidence. *Id.*

At this stage of the pleadings, a Rule 12 standard must be applied to Defendants' ICPA Motion. Defendants have failed to carry their initial burden that World Kitchen's Complaint is solely a SLAPP in retaliation for the Defendants' exercise of their "rights of petition, speech, association, or to otherwise participate in government." Rather, as discussed above, World Kitchen has sufficiently stated a claim for trade disparagement, and therefore, dismissal is not appropriate. *See Sandholm*, 962 N.E.2d at 431. Although Defendants seek to introduce additional sources of proof with their Motion, these issues of fact are reserved for summary judgment motions after discovery has been permitted. Therefore, Defendants' ICPA Motion is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions [18, 20] are denied.

Date: September 19, 2013

_____
JOHN W. DARRAH
United States District Court Judge

11