UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WORLD KITCHEN, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-8626 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| THE AMERICAN CERAMIC | ) | |
| SOCIETY, RICHARD C. BRADT, | ) | |
| RICHARD L. MARTENS, and | ) | |
| PETER WRAY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 29, 2012, Plaintiff World Kitchen, LLC filed a Complaint, alleging violations of the Illinois Uniform Deceptive Trade Practices Act ("DTPA") against Defendants, The American Ceramic Society ("ACS"), Richard C. Bradt, Richard L. Martens, and Peter Wray (collectively, "Defendants"). Plaintiff alleges that Defendants violated the DTPA by: (i) misrepresenting the thermal stress resistance value of World Kitchen's American-made heat-strengthened soda lime Pyrex glass cookware ("Pyrex glass cookware") to be 99°F; (ii) making false or misleading representations that the thermal stress resistance value of Pyrex glass cookware is 99°F; and (iii) engaging in conduct creating a likelihood of confusion or misunderstanding about Pyrex glass cookware's resistance to thermal breakage during normal kitchen cooking. (FAC.)

A bench trial was held on December 7 and 8, 2015, and January 7, 2016. The trial included the testimony of ten witnesses, as well as the admission of various exhibits into evidence. In addition to live testimony at trial, World Kitchen submitted the deposition testimony of Defendants Bradt and Wray and ACS Executive Director Charles Spahr to be

1

considered by the Court in support of its case in chief. The parties submitted written closing arguments, written responses to those arguments, written responses addressing any pending evidentiary issues, and proposed findings of fact and conclusions of law.

This matter now comes before the Court following the presentation of evidence. The Court has considered the evidence, particularly including careful attention to the testimony of witnesses. The Court, in weighing the testimony of the witnesses, has considered: (1) the witnesses' intelligence; (2) the witnesses' memory; (3) the witnesses' abilities and opportunities to see, hear, or know the things that they testified about; (4) the witnesses' manner while testifying; (5) any interest, bias, or prejudice the witnesses may have; and (6) the reasonableness of the witnesses' testimony when considered in light of all the evidence in the case. *See* Fed. Civ. Jury Instr. 7th Cir. § 1.13 (2009). The Court has further considered the written arguments submitted by counsel for the parties and the authority cited therein.

Pursuant to Fed. R. Civ. P. 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all the admissible evidence and this Court's own assessment of the credibility of the trial witnesses. To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be deemed Findings of Fact. The Analysis section of this Opinion and Order, for purposes of organization and clarity, contains some reference to law and facts. To the extent, if any, that any part of the Analysis may be considered Findings of Fact or Conclusions of Law, it shall be so deemed.

For the following reasons, Plaintiff failed to meet its burden of proof that Defendants violated 815 ILCS § 510/2(a)(7), (8), and (12) of the Illinois Uniform Deceptive Trade Practices Act; and judgment is entered in favor of the Defendants.

## FINDINGS OF FACT

Plaintiff World Kitchen is a Delaware limited-liability company with its principal place of business in Illinois. (Dkt. 98 ¶ 1.) World Kitchen is one of the leading manufacturers and distributors of kitchen products, including the Pyrex brand glass cookware. (Trial Tr. 22:24-25, 23:13-15; Dkt. 245 ¶ 9.) Defendant American Ceramic Society ("ACS") is an Ohio corporation located in Westerville, Ohio. It is a membership organization that has approximately 6,000 members comprised of professionals, consultants, and members of academia, government, and industry that focuses on information and developments relating to the ceramics and glass industries. (Trial Tr. 259:22-260:1; Dkt. 249 at 2; Dkt. 245 ¶ 10.) Defendant Peter Wray was employed by ACS as the editor of one of its publications, the *American Society Bulletin* ("*Bulletin*"), at all times relevant to this case and is a resident of Ohio. (Dkt. 245 ¶ 11.) Defendant Richard C. Bradt is a materials scientist and professor emeritus at the University of Alabama. (Trial Tr. 508:16-18, 511:2-3.) He is a member of ACS and is a resident of Alabama. (Dkt. 245 ¶ 12.) Defendant Richard L. Martens is also an ACS member and works at the University of Alabama. (FAC ¶ 16.) Defendant Martens is a resident of Alabama. (Dkt. 245 ¶ 13.) Defendant Bradt has acted as a paid consultant on three occasions in lawsuits involving injuries allegedly caused by shattering glass cookware. (Trial Tr. 518:18-529:18.) Defendant Martens assisted Defendant Bradt with the creation of reports prepared on behalf of plaintiffs in two of those cases. (Pl. Ex. 17; Trial Tr. 529:16-18.)

In 1998, World Kitchen was granted a license from Corning Inc. ("Corning") to produce its heat-strengthened soda lime Pyrex glass cookware. (Trial Tr. 21:19-23, 105:12-15.) World Kitchen produces Pyrex glass cookware at its Charleroi, Pennsylvania manufacturing facility, which it also purchased from Corning in 1998. (Trial Tr. 22:22-23:1, 23:6-15, 23:21-25.) World Kitchen is licensed by Corning to distribute and sell its Pyrex glass cookware in the United States, Latin America, and certain other countries through major retailers, online sources, and direct sales through World Kitchen's website and factory stores. (Trial Tr. 21:19-24, 24:8-16, 85:16-21, 89:14-17.)

ACS produces print and online publications, including the *Bulletin* and a blog, *Ceramic Tech Today.* (Trial Tr. 261: 20-23; FAC ¶ 14.) In the September 2012 issue of the *Bulletin*, ACS published an article written by Defendants Bradt and Martens, titled "Shattering Glass Cookware" (the "Article"). (Def. Ex. 1; Pl. Ex. 1.) ACS announced publication of the Article on its *Ceramic Tech Today* blog in a post called "Hell's Kitchen: Thermal Stress and Glass Cookware that Shatters" (the "Blogpost"). (FAC ¶ 6; Pl. Ex. 2.) ACS also issued a press release on September 11, 2012, titled "New paper addresses cause of shattering glass cookware" (the "Press Release"). (FAC ¶ 5; Pl. Ex. 3.) The Blogpost and the Press Release included links and references to the Article.

The Article discusses "the technical aspects of the sudden, explosion-like failure of glass cookware products." (Pl. Ex. 1 at 33.) The word "cookware" is used more than 75 times in the story. It also refers to Plaintiff and identifies Plaintiff as the manufacturer of American-made Pyrex glass cookware. (Dkt. 249 ¶ 26.) The Article identifies the thermal stress resistance value ($\Delta T$ value) for two glass types: borosilicate glass and soda lime silicate glass. (Pl. Ex. 1 at 35.) It states that the $\Delta T$ values of the rapid temperature change necessary to initiate thermal shock

fracture "[f]or borosilicate glass, the calculated temperature difference is about 183°C (about 333°F), but it is only about 55°C (about 99°F) for soda lime silicate glass." (*Id.*) It also states that textbook authors Carter and Norton estimate thermal stress ΔT values for fracture as 270°C (436°F) for borosilicate glass and 80°C (144°F) for soda lime silicate glass, and that Corning estimates thermal stress ΔT values as 54°C (97°F) for borosilicate glass and 16°C (29°F) for soda lime silicate glass. (*Id.* at 36.)

The Article also discusses heat strengthening of soda lime silicate glass cookware. (Pl. Ex. 1 at 36.) The Article states that the authors bought new, unused soda lime silicate cookware pieces and studied them using fractography and photoelasticity to evaluate whether the pieces had been heat strengthened. (*Id.* at 36, 37.) The Article further states that "although the cookware definitely has been heat strengthened . . . it does not appear to be sufficient to increase substantially the thermal stress fracture resistance of the cookware." (*Id.* at 37.)

None of the authors were paid for the Article or received any sponsorship for the Article from any producer, seller or manufacturer of glass cookware or from any outside company or organization. (Trial Tr. 530:6-10, 265:3-9.) Defendant Bradt did not engage in any expert consultant work in any lawsuits involving glass cookware after publication of the Article and did not receive any money for any work as an expert consultant in any lawsuits involving glass cookware as a result of or after publication of the Article. (Trial Tr. 529:23-25, 530:1-3, 531:1-9, 590:21-23, 591:13-14.)

## CONCLUSIONS OF LAW

*Jurisdiction*

This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the value of injunctive relief at issue exceeds $75,000, exclusive

of interests and costs. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(2) and (b)(2).

*Illinois Uniform Deceptive Trade Practices Act*

To prevail on its DTPA claim, Plaintiff must prove, by a preponderance of the evidence, that Defendant, in the course of its business, vocation, or occupation: (i) represented that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; (ii) disparaged the goods, services, or business of another by false or misleading representation of fact; and (iii) engaged in any other conduct which similarly creates a likelihood of confusion or misunderstanding. 815 ILCS § 510/2(a)(7), (8), (12). Illinois state courts have held that, in effect, the DTPA codified the common-law tort of commercial disparagement. *See Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 710 (N.D. Ill. 2006) (citing *Crinkley v. Dow Jones & Co.,* 385 N.E.2d 714, 719 (1978)). To state a claim under the DTPA alleging commercial disparagement, Plaintiff must show that Defendants' statements "disparage[d] . . . the quality of [his] goods or services." *Conditioned Ocular*, 458 F. Supp. 2d at 710.

The DTPA is a constitutionally permissible "regulation prohibiting false, misleading or deceptive commercial speech." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 919 (N.D. Ill. 2007) (quoting *People ex. rel. Hartigan v. Maclean Hunter Publ'g Corp*., 457 N.E.2d 480, 488 (1983)). The Seventh Circuit has held that "other communications also may constitute commercial speech notwithstanding the fact that they contain discussions of important public issues." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014). Relevant considerations include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and

6

(3) the speaker has an economic motivation for the speech." *See United States v. Benson*, 561 F.3d 718, 725 (7th Cir.2009) (citing *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983)). No one factor is sufficient, and not all are necessary. *Jordan*, 743 F.3d at 517.

## RULINGS

*Admissibility of Exhibits*

The Court reserved ruling on the admission of several exhibits introduced at trial. Objections to the admission of Plaintiff's Exhibits 8, 9, 13, 14, 15, 16, 10 and 11 were taken under advisement. Plaintiff's Exhibit 8 is an article, titled "Corning Watch: Pyrex to be celebrated with an exhibit," dated May 27, 2015. This exhibit was admitted solely for the purpose of determining potential injury to Plaintiff. The parties were instructed to brief the Court on whether this exhibit was disclosed during discovery and, if so, whether it should be excluded from evidence. (Trial Tr. 84:16-19.) As Plaintiff's Exhibit 8 was disclosed to Defendants on December 4, 2015, and Defendants have not shown prejudice as a result of its disclosure a few days prior to trial, it is admitted for the purpose of determining potential injury to Plaintiff.

Plaintiff's Exhibit 9 is the Pyrex ACS Bulletin Article Tracker. Defendants objected to this exhibit because they assert that it was prepared in anticipation of litigation and cannot be admitted as a business record under Federal Rule of Evidence 803(6). Rule 803(6) allows the admission of records prepared and kept in the ordinary course of business. However, these records are only admissible if the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(E). "The opponent . . . is not necessarily required to introduce affirmative evidence of untrustworthiness. For example, the opponent might argue that a record was prepared in

7

anticipation of litigation and is favorable to the preparing party without needing to introduce evidence on the point." Fed. R. Evid. 803(6) Advisory Committee's Note.

Grant Deady, the managing director of the Chicago office of Zeno Group Public Relations ("Zeno Group"), testified that Zeno Group began media tracking regarding the Article shortly after it was published in September of 2012, that Zeno Group had a professional relationship with Plaintiff prior to publication, and that Plaintiff did not establish that relationship in connection with the Pyrex ACS Bulletin Article Tracker. (Trial Tr. 109:4-11, 118:3-18, 122:20-24, 123:3-11.) Deady also testified that the Pyrex ACS Bulletin Article Tracker is an example of the routine media monitoring tracking service that Zeno Group would provide to any client. (Trial Tr. 123:12-17.) The evidence at trial establishes that this exhibit was not created in anticipation of litigation and therefore is admissible as a business record under Federal Rule of Evidence 803(6).

Plaintiff's Exhibits 13 and 14 are documents generated by CED Technologies, Inc. ("CED"), containing information collected and recorded by CED regarding the thermal shock resistance of Pyrex glass cookware. Plaintiff argues that these documents are records of a regularly conducted business activity and admissible pursuant to Rule 803(6) and represented that they would be authenticated by a fact witness, Dr. Marcus Zupan. Defendant objects to these records and any supporting testimony from Dr. Zupan, arguing that this evidence is inadmissible because of Plaintiff's failure to timely disclose it as expert testimony and that the CED test reports do not meet the standard of trustworthiness required for them to be admitted as business records under Rule 803(6). Expert discovery in this case closed on June 5, 2015. At that time, Plaintiff failed to disclose any expert witnesses or expert reports to support their case and made no attempt to do so prior to trial.

As noted above, records are only admissible as business records under Rule 803(6) if the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness, i.e., documents prepared in anticipation of litigation. Fed. R. Evid. 803(6)(E). Dr. Zupan, a representative of CED, testified that as a consultant to CED, he was hired to conduct experiments on Pyrex glass cookware. (Trial Tr. 221:18-222:5.) After he agreed to conduct the testing, he spoke with Plaintiff's counsel to determine what kind of testing she wanted him to perform. Dr. Zupan testified that Plaintiff's counsel then asked him to perform a second round of testing, that some of the samples he used to perform the test were provided by Plaintiff's counsel, that this type of testing is not something he conducts in the ordinary course of his business, and that Plaintiff's counsel also instructed him on what standard testing to use. (Trial. Tr. 222:12-224:5; 225:9-13.) Thus, these records were created at the direction of counsel and not in the ordinary course of CED's business. The evidence at trial establishes that these documents were created in anticipation of litigation and are not admissible as business records under Rule 803(6).

Plaintiff's Exhibit 15 is a declaration of a Glass Technology Services Ltd. ("GTS") representative, Catherine Robinson, certifying the authenticity of test reports generated by GTS. Plaintiff's Exhibit 16 consists of reports generated by GTS regarding the thermal shock resistance of Pyrex glass cookware. This Court previously ruled that Exhibit 15 is admissible under Federal Rule of Evidence 902(12) as to authentication but specifically reserved judgment on whether Exhibit 16 is admissible under Rule 803(6). The reports submitted by Plaintiff detail the results of thermal shock testing of Pyrex glass cookware conducted by GTS. These reports were created for Plaintiff's counsel, were distributed to Plaintiff's counsel, and the samples used for testing were provided by Plaintiff's counsel. (Pl. Ex. 16.) As with Plaintiff's Exhibits 13 and

14, these reports were clearly created in anticipation of litigation and cannot be admitted into evidence under Rule 803(6).

Plaintiff also argues that Plaintiff's Exhibits 13, 14, 15, and 16 be admitted under the residual exception to hearsay pursuant to Federal Rule of Evidence 807. Rule 807 states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed. R. Evid. 807. As noted above, these exhibits do not have the "equivalent circumstantial guarantees of trustworthiness" required by Rule 807, as they were prepared in anticipation of litigation and at the direction of Plaintiff's counsel. These exhibits do not qualify under the residual exception to hearsay.

Plaintiff's Exhibits 10 and 11 are the British/European standard specifying safety and performance requirements for cookware-ovenware used in traditional ovens, and the British/European standard for assessing thermal shock endurance of glass cookware to be used in the home, respectively. Defendants objected to the admission of these exhibits as hearsay. Plaintiff argues that these exhibits are admissible by judicial notice under Federal Rule of Evidence 201 or, in the alternative, under the residual exception under Federal Rule of Evidence 807. Pursuant to Rule 201, the Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201. Plaintiff offered these exhibits as standards used by GTS and CED Technologies to quantify the thermal shock resistance of glass cookware used in

10

consumers' ovens. (Trial Tr. 188: 3-189:5; 192:24-193:8; 195:18-21.) The CED Technologies and GTS reports submitted by Plaintiff were not admitted; therefore, these exhibits are not relevant or probative and are not admissible.

*Exhibits Under Seal*

Plaintiff requests that Plaintiff's Exhibits 13, 14, 16, 18, and 19 remain under seal after the completion of these proceedings. Defendants did not object to Plaintiff's motions to file Exhibits 13, 14, 18 and 19 under seal but submitted a response in opposition to Plaintiff's Motion for Leave to File Exhibit 16 Under Seal [202, 206]. Defendants argue that a seal on this exhibit would "affect third parties, the public and the press that have an interest in the conduct and outcome of judicial proceedings." Defendants also argue that Plaintiff requests that these documents be sealed because they will be of interest to potential plaintiffs in products liability cases involving "explosions and shattering of soda lime silicate cookware." Defendants do not provide any argument as to why these documents are different from the exhibits they did not oppose and why these documents are of particular public interest. Their assertions are unsubstantiated; thus, Plaintiff's Motion to Seal Plaintiff's Exhibits 13, 14, 16, 18, and 19 [202] is granted.

**ANALYSIS**

As set out above, in order to find Defendants guilty of a DTPA violation, it must be proven, by a preponderance of the evidence, that: (1) Defendants made statements regarding the quality of Plaintiff's goods, in this case, Pyrex glass cookware, that were false or misleading; (2) Defendants disparaged the quality of Pyrex glass cookware in making the false or misleading statements; (3) Defendants published the statements; and (4) Defendants made the statements in the course of their business, vocation, or occupation. 2-48 Illinois Forms of Jury Instructions

§ 48.41. It is undisputed that Defendants made the statements at issue in the course of its business, vocation, or occupation and that Defendants published the statements in the Article, Blogpost, and Press Release. (Def. Ex. 1; Pl. Exs. 1, 2, and 3; Dkt. 245 ¶ 54.) At issue is whether Defendants made statements regarding the quality of Pyrex glass cookware that were false or misleading and whether Defendants disparaged the quality of Pyrex glass cookware in making those statements.

As Plaintiff's Exhibits 13, 14, and 16 are deemed hearsay and inadmissible, Plaintiff failed to offer any testimony or any admissible competent evidence to prove the falsity or misleading nature of any statements made by Defendants. Similarly, Plaintiff has failed to offer any competent evidence that the statements in question were misleading. Plaintiff concedes that the only material fact in dispute concerning the merits of its claim is the truth or falsity of Defendants' representations as alleged in Plaintiff's Complaint. (Dkt. 247 at 2.) The Article gives $\Delta T$ values for borosilicate glass and soda lime silicate glass. It then discusses heat-strengthened soda lime silicate cookware and the results of the authors' studies of that cookware. Nothing in the trial record contradicts Defendants' calculation of the $\Delta T$ value of soda lime silicate glass. Based on these analyses, the authors made conclusions regarding the "phenomenological cause" of fractures in soda lime silicate glass cookware and how "normal kitchen cooking temperatures" may affect this cookware. Plaintiff argues extensively that these conclusions are false or misleading but provides no argument based on admissible evidence.

Plaintiff notes that Defendants' legal argument that the Article, Blogpost, and Press Release do not specifically discuss the thermal stress resistance of glass cookware is in itself misleading because the Article, Blogpost, and Press Release mention the term "cookware," include an image of broken glass cookware, and includes the word "cookware" in the titles of the

publications. All three of these publications also discuss the thermal stress resistance of different types of glass. At best, this is an argument that Defendants' legal posture in this case is misleading but does not provide convincing argument why the conclusions and statements in the article are misleading to the reader. Further, Plaintiff failed to submit any admissible evidence that the statements in question were false and failed to explain how the inclusion of those statements, which were not proven to be false, in publications that mention Pyrex cookware could be misleading. The article clearly states that it is examining the issue of the shattering of glass cookware. That statement is obvious and does not mislead the reader. However, it does not make specific statements regarding the thermal stress resistance of that glass cookware. Even if the article implied that Pyrex glass cookware had a $\Delta T$ value of 99°F, nothing in the record establishes that this value is false. Plaintiff provides no other argument supporting its allegation that the speech at issue was misleading. Therefore, Plaintiff has failed to prove by a preponderance of the evidence that Defendants violated the DTPA.

Even if Plaintiff did establish that Defendants violated the DTPA, the evidence at trial established that the speech at issue is noncommercial speech and, thus, is not prohibited by the DTPA. Relevant considerations include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *See United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009) (citing *Bolger*, 463 U.S. at 66-67). As noted in the Memorandum Opinion and Order, dated September 15, 2015, denying Defendants' Motion for Summary Judgment [Dkt. 161], it is clear that the speech at issue is not an advertisement; and while the *Bulletin* article referred to American-made, heat-strengthened soda lime glass cookware, it did not refer to a specific product, or a specific producer's product, when discussing the $\Delta T$ values of borosilicate glass and soda lime silicate glass. The speech also

13

does not fall within the traditional definition of commercial speech: it does not propose a business transaction between the speaker and a specific customer.[1]

At the time of the September 15, 2015 Order, this Court concluded that Plaintiff had not provided sufficient evidence that Defendants had an economic motivation for the speech at issue. The evidence elicited at trial shows that none of the authors were paid for the Article or received any sponsorship for the Article from any producer, seller or manufacturer of glass cookware or from any outside company or organization. (Trial Tr. 530:6-10, 265:3-9.) Defendant Bradt did not engage in any expert consultant work in any lawsuits involving glass cookware after publication of the Article and did not receive any money for any work as an expert consultant in any lawsuits involving glass cookware as a result of or after publication of the Article. (Trial Tr. 529:23-25, 530:1-3, 531:1-9, 590:21-23, 591:13-14.) Plaintiff offered no new evidence that Defendants Bradt and Wray had an economic motivation for writing the Article. After consideration of all of the evidence in the record, this conclusion has not changed. Even if Plaintiff established that Defendants had an economic motivation for the speech at issue, "no one factor is sufficient" to conclude that the Article, Blogpost, and Press Release are commercial speech.

---

[1] *See Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 684-686 (7th Cir. 1998).

# **CONCLUSION**

For all the reasons discussed above, Plaintiff has failed to meet its burden of proof that Defendants violated 815 ILCS § 510/2(a)(7), (8), (12) of the Illinois Uniform Deceptive Trade Practices Act. Plaintiff's Motion to Seal Plaintiff's Exhibits 13, 14, 16, 18, and 19 [202] is granted. Judgment is entered against the Plaintiff and in favor of the Defendants.

Date: _____June 30, 2016_____ _____
JOHN W. DARRAH
United States District Court Judge